IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Scurmont LLC, d/b/a Calli Baker's Firehouse Bar & Grill, | ) ) ) | C/A No. 4:09-cv-00618-RBH |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| Firehouse Restaurant Group, Inc., a Florida Corporation, Chris Sorensen, and Robin Sorensen, | ) ) ) ) ) | |
| Defendants. | ) ) | |

| | | |
|---|---|---|
| Firehouse Restaurant Group, Inc., a Florida Corporation, Three Alarm Subs, Inc., a South Carolina corporation, and Fireside Restaurant Company, Inc., a South Carolina Corporation, | ) ) ) ) ) ) | C/A No. 4:09-cv-00673-RBH |
| Plaintiff, | ) ) | |
| v. | ) ) ) | **ORDER** |
| Heath Scurfield, an individual, and Scurmont LLC, a South Carolina Corporation doing business as Calli Baker's Firehouse Bar & Grill, | ) ) ) ) ) | |
| Defendants. | ) ) | |

Pending before the Court in the Scurmont Lawsuit [4:09-cv-00618-RBH] is Firehouse's Motion to Dismiss Plaintiff's Amended Complaint And/Or For More Definite Statement [Docket #14] and the Sorensen's Motion to Dismiss Plaintiff's Amended Complaint And/Or For More Definite Statement [Docket #28]. Pending before the Court in the Firehouse Lawsuit [4:09-cv-00673-RBH] is Firehouse's

Motion to Dismiss Defendants' Counterclaims, To Strike Defenses And/Or For More Definite Statement [Docket #20]. Significantly, both lawsuits were consolidated for all purposes under the civil action number assigned to the Scurmont Lawsuit, No. 4:09-cv-00618-RBH, by Order dated January 8, 2010 [Docket #37]. This matter was reassigned to the undersigned on January 12, 2010.

This is a trademark dispute between two competing restaurants. Firehouse Restaurant Group, Inc. ("Firehouse") is the franchisor of the FIREHOUSE SUBS® restaurant franchise that operates more than 350 locations throughout various parts of the United States, including Myrtle Beach, South Carolina. Scurmont, LLC ("Scurmont") also operates a restaurant in Myrtle Beach, South Carolina under the name CALLI BAKER'S FIREHOUSE BAR & GRILL. Scurmont has used the current name since 2005 and incorporates a firehouse theme in its décor and menu. Firehouse claims to own more than 60 registered trademarks and service marks. Of the 60 or more registered marks allegedly obtained by Firehouse, two marks are for the term FIREHOUSE alone; these two marks are the subject matter of this case. Firehouse initially contacted Scurmont by sending a cease and desist letter advising of the conflict between its FIREHOUSE® and FIREHOUSE SUBS® marks and franchises and the Plaintiff's use of FIREHOUSE in its business name. The resulting settlement discussions ended unsuccessfully and, within five days of each other, both parties filed lawsuits in this Court.

**Procedural History**

Scurmont Lawsuit

On March 11, 2009, Scurmont filed this lawsuit [4:09-cv-00618-RBH] ("Scurmont Lawsuit") and originally named Firehouse as the sole defendant. The Complaint asserts six causes of action for: (1) a declaratory judgment that Scurmont's restaurant name does not infringe Firehouse's marks; (2) violation of South Carolina's Unfair Trade Practices Act ("SCUTPA"); (3) Unfair Competition; (4) trademark misuse

2

in violation of the Sherman Act; (5) trademark cancellation due to fraud; and (6) trademark cancellation due to prior usage by others.  However, Scurmont did not serve its Complaint on Firehouse until April 6, 2009.[1]  On May 15, 2009, Scurmont filed its Amended Complaint in this lawsuit, naming Robin and Chris Sorensen ("the Sorensens") as additional defendants.  The Sorensens were not served until June 4, 2009. The only difference between the original Complaint and the Amended Complaint is the addition of co-defendants the Sorensens.  The Amended Complaint does not differentiate between any of the defendants or how the alleged claims and conduct are specifically attributable to each of them.  Nearly every allegation in the Amended Complaint which previously identified Defendant Firehouse has been replaced with the plural form "Defendants."

On May 15, 2009, Firehouse filed its Motion to Dismiss Plaintiff's Amended Complaint And/Or For More Definite Statement [Docket #14], Memorandum in Support, and accompanying documentation. On June 5, 2009, Scurmont filed a response in opposition, and Firehouse filed a reply on June 12, 2009. On June 24, 2009, the Sorensens filed a Motion to Dismiss Plaintiff's Amended Complaint And/Or For More Definite Statement [Docket #28], Memorandum in Support, and accompanying documentation.  On July 13, 2009, Scurmont filed a response in opposition, and the Sorensens filed a reply on July 23, 2009. Firehouse and the Sorensens have subsequently provided the court with supplemental authority for both pending motions, and Scurmont has filed a reply.

Firehouse Lawsuit

On March 16, 2009, five days after the filing of the Scurmont Lawsuit but before Firehouse was served, Firehouse filed a lawsuit against Scurmont and its owner, Heath Scurfield, which is also pending

---

[1] This is two weeks after Firehouse served Scurmont with its lawsuit that was filed on March 23, 2009. *See* No.: 4:09-cv-00673-RBH ("Firehouse Lawsuit").

in this District and Division [4:09-cv-00673-RBH] ("Firehouse Lawsuit"). The Firehouse Lawsuit also names as co-plaintiffs two of Firehouse's Myrtle Beach area franchisees, Three Alarm Subs, Inc. ("Three Alarm") and Fireside Restaurant Company, Inc. ("Fireside"). The Firehouse Lawsuit asserts four causes of action against co-defendants Scurmont and Heath Scurfield: (1) Federal Trademark Infringement of Firehouse's federal trademark and service registrations (15 U.S.C. § 1125(a)); (2) False Designation of Origin (§ 1125(a)); (3) Common Law Trademark Infringement and Unfair Competition; and (4) Unjust Enrichment. On April 13, 2009, co-defendants Scurmont and Heath Scurfield filed a consolidated Answer, asserting as counterclaims[2] and affirmative defenses the identical six causes of action that Scurmont alleged in the Scurmont Lawsuit. On May 15, 2009, Firehouse filed its Motion to Dismiss Defendants' Counterclaims, To Strike Defenses And/Or For More Definite Statement [Docket #20, Firehouse Lawsuit]. On June 5, 2009, co-defendants Scurmont and Heath Scurfield filed a response in opposition, and Firehouse filed a reply on June 12, 2009. The parties have subsequently provided the Court with supplemental authority.

**Discussion**

**I: Firehouse's Motion to Dismiss Plaintiff's Amended Complaint And/Or For More Definite Statement [Docket #14]** ("Motion to Dismiss Amended Complaint"). In its motion, Firehouse makes three arguments: (1) "This Lawsuit Should be Dismissed Because it is Duplicative of the Firehouse Lawsuit and is an Improper Anticipatory Filing"; (2) "The First Cause of Action for Declaratory Judgment Should Be Dismissed as an Impermissible Mirror-Image of the Firehouse Lawsuit"; and (3) "All Five Remaining Causes of Action in the Amended Complaint Fail to State a Claim Upon Which Relief Can Be Granted Pursuant to Fed. R. Civ. P. 12(b)(6)." The Court will address Firehouse's arguments in turn.

---

[2] With regard to these counterclaims, see *infra* p. 34 and note 13.

4

First, Firehouse seeks to have the Court dismiss the instant lawsuit based on the anticipatory filing exception to the first-filed rule. However, Firehouse's argument regarding the application of the anticipatory filing exception to the first-filed rule is inapplicable to the instant matter because Firehouse has not been deprived of its choice of forum.

When two nearly identical federal actions are simultaneously pending, "doctrines of federal comity dictate that the matter should proceed in the court where the action was first-filed."[3] *See Nutrition & Fitness, Inc. v. Blue Stuff, Inc.,* 264 F. Supp. 2d 357, 360 (W.D.N.C. 2003). The Fourth Circuit has recognized this rule. *Ellicott Mach. Corp. v. Modern Welding Co.*, 502 F.2d 178, 180 n.2 (4th Cir. 1974) ("It has long been held in this circuit that, as a principle of sound judicial administration, the first suit should have priority, 'absent the showing of balance of convenience in favor of the second action.'"); *SAS Institute, Inc. v. Practicingsmarter, Inc* ., 353 F. Supp. 2d 614, 617 (M.D.N.C. 2005). The first-filed rule is generally applied in cases where two federal courts have coordinate jurisdiction over actions involving the same issues, in order to determine the proper venue in which to litigate the dispute. *Nat'l Textiles, LLC v. Daugherty*, 250 F. Supp. 2d 575, 581 n.1 (M.D.N.C. 2003).

However, "even if a court finds the first-filed rule applicable, it may still make the discretionary determination that the rule should be ignored as a result of 'special circumstances,' such as forum shopping, anticipatory filing, or bad faith filing." *Nutrition & Fitness,* 264 F. Supp. 2d at 360 (citations omitted); *see Myles Lumber Co. v. CNA Fin. Corp.,* 233 F.3d 821, 824 (4th Cir. 2000) (noting that one factor for determining when to decline to assert jurisdiction in a declaratory judgment action is "whether the

---

[3] Following Firehouse's argument, the instant matter presents an unusual application of the first-filed rule in that both this case (which was the first-filed) and the lawsuit filed by Firehouse (the second-filed, but the first served) are pending in this District and Division. Application of the first-filed rule is usually exercised to prevent forum shopping.

declaratory judgment action is being used merely as a device for 'procedural fencing'"). In a typical trademark infringement case, for example, the first-filed rule would be disfavored in a scenario where "(1) a [trademark registrant] has notified an alleged infringer of suspected infringement, (2) good faith negotiations between the parties have ensued <u>and</u> (3) the alleged infringer then files a declaratory judgment action in the forum of his choice." *Samsung Electronics Co., Ltd. v. Rambus, Inc*., 386 F. Supp. 2d 708, 724 (E.D. Va. 2005). *But see SAS Institute, Inc.*, 353 F. Supp. 2d at 614 (finding it appropriate to apply the first-filed rule where both lawsuits were filed in the same court because it did not appear that the first-filer filed its declaratory judgment action first as an improper attempt to prevent its adversary from selecting a venue of its choosing).

In its Motion to Dismiss Amended Complaint, Firehouse argues that the Scurmont Lawsuit should be dismissed because "it is nothing more than a preemptive lawsuit filed in anticipation of the Firehouse Lawsuit." *Id.* at 4. Accordingly, Firehouse claims that the instant matter is an "anticipatory filing" and should not be governed by the first-filed rule. However, any exception to the first-filed rule is inapplicable in this matter because both lawsuits were filed here in the same District and Division, and Firehouse has not been deprived of its choice of venue. Thus, it is difficult to characterize the Scurmont Lawsuit as an "anticipatory filing" intended to deprive Firehouse of its choice of forum.

On June 6, 2008, Scurmont received a cease and desist letter from Firehouse's attorney claiming that Scurmont was improperly using the mark and trade name of Firehouse. Scurmont was warned that Firehouse would "'take all necessary steps' to stop Plaintiff's activities." *Motion to Dismiss Amended Complaint*, p.7. The parties then undertook efforts to resolve their differences. Scurmont admits that "[o]n several occasions, [Firehouse's] attorney [] threatened to file a lawsuit against [Scurmont] for its use of its mark and trade name." *Amended Complaint,* ¶ 27. However, the parties negotiated for nearly eight months.

6

During that time, Firehouse's attorney threatened to file a lawsuit at least four separate times. *See Motion to Dismiss Amended Complaint,* p.7 ("Firehouse always made its intentions clear – it would bring suit against Plaintiff unless it agreed to change its business name.")  At the same time, according to Scurmont, it clearly informed Firehouse that Calli Baker's could no longer continue doing business under the cloud of uncertainty created by Firehouse's threats. *Scurmont's Response,* p.5.  On February 3, 2009, Firehouse's attorney mailed a letter advising: "If our clients cannot reach agreement by the end of this week, [Firehouse] has instructed this firm to authorize its local counsel in the Florence Division to file the previously prepared complaint." On February 17, 2009, Scurmont's attorney e-mailed Firehouse's attorney advising that Scurmont would like to make one more attempt to resolve the disagreement.  Those efforts were unsuccessful, and still no lawsuit had been filed by Firehouse.  Scurmont did not file suit until several weeks later on March 11, 2009.  Subsequently, Firehouse filed its lawsuit five days after the Scurmont Lawsuit.  While Scurmont beat Firehouse to the courthouse, it appears that the Scurmont Lawsuit was filed not as an anticipatory filing intended to deprive Firehouse of its choice of forum, but rather, because Calli Baker's wished to bring to a conclusion the legal differences between the parties, which had been on-going for many months.

### *Scurmont's First Cause of Action for Declaratory Judgment of Non-Infringement*

Next, Firehouse claims that Scurmont's first cause of action, which requests a declaratory judgment that its use of its Calli Baker's trade name and mark does not infringe or dilute any trademarks owned by Firehouse, should be dismissed as an improper assertion of a "mirror image" of the Firehouse Lawsuit. Firehouse claims that "[f]ederal courts routinely dismiss claims seeking declarations of non-infringement where there is already a claim for infringement pending." *Motion to Dismiss Amended Complaint,* p.9. However, Scurmont filed its lawsuit **before** the Firehouse Lawsuit.  As such, it is not a "mirror image" of

the Firehouse Lawsuit, and Scurmont had every right to seek a declaration from the Court to determine its rights. The fact that Scurmont filed a declaratory judgment of non-infringement along with its other claims before Firehouse filed its own lawsuit is simply not a ground for dismissal under the circumstances of this case.

Finally, in its Motion to Dismiss Amended Complaint, Firehouse argues that Scurmont's five remaining causes of action in the Amended Complaint fail to state a claim upon which relief can be granted and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). The Supreme Court has clarified the standard for dismissal under Rule 12(b)(6) and held that the "no set of facts" standard only describes the "breadth of opportunity to prove what an adequate complaint claims, not the minimum adequate pleading to govern a complaint's survival." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 563 (2007). Under *Twombly,* to survive Rule 12(b)(6) scrutiny, the plaintiff's claim to relief must at least be "plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal* 129 S. Ct. 1937, 1949 (U.S. 2009). However, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Id.* (quoting *Twombly,* 550 U.S. at 557). While a court accepts the factual allegations in the complaint as true and considers those facts in the light most favorable to a plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts. Inc. v. J.D. Assocs. LLP,* 213 F.3d 175, 180 (4th Cir. 2000). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. *Iqbal,* 129 S. Ct. at 1949. As such, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all

8

the allegations in the complaint are true (even if doubtful in fact)." *Twombly,* 550 U.S. at 555 (citations omitted).

*Scurmont's Second Cause of Action Asserting Violations of the SCUTPA*

Next, Firehouse argues that "[Scurmont's] second cause of action, asserting violations of the South Carolina Unfair Trade Practices Act ("SCUTPA"), should be dismissed because it pleads mere conclusions unsupported by any factual allegations." *Motion to Dismiss Amended Complaint,* p.12.  To maintain a private cause of action under the SCUTPA, a plaintiff need only establish: "(1) that the defendant[s] engaged in an unlawful trade practice, (2) that the plaintiff suffered actual, ascertainable damages as a result of the defendant[s'] use of the unlawful trade practice, and (3) that the unlawful trade practice engaged in by the defendants had an adverse impact on the public interest." *Havird Oil Co. v. Marathon Oil Co.,* 149 F.3d 283, 291 (4th Cir. 1998); *see* S.C. Code Ann. § 39-5-20 (2006) (The SCUTPA declares unlawful any "unfair . . . acts or practices in the conduct of any trade or commerce.").  Accordingly, the act or trade practice complained of must be unfair or deceptive. *See, e.g., Camp v. Springs Mortgage Corp.,* 426 S.E.2d 304, 306 (S.C. 1993).  Under the SCUTPA, an act or trade practice is unfair "when it is offensive to public policy or when it is immoral, unethical, or oppressive." *Gentry v. Yonce,* 522 S.E.2d 137, 143 (S.C. 1999).  Further, the requirement to show impact on the public interest may be met by showing the act or trade practice has the potential for repetition. *Noack Enters., Inc. v. Country Corner Interiors of Hilton Head Island, Inc.,* 351 S.E.2d 347, 351 (S.C. Ct. App. 1986).

In paragraph 34 of the Amended Complaint, Scurmont alleges that Firehouse: (1) issued a cease and desist letter to Scurmont that falsely stated that Firehouse has the "exclusive right" to use the term FIREHOUSE nationwide; and (2) that Firehouse knew its trademarks were generic and "incapable of serving as an indicator of source." *Amended Complaint,* ¶ 34.  Scurmont then states that "Defendants have

9

engaged in a scheme of advancing groundless trademark infringement claims based upon invalid, abandoned, generic and otherwise unenforceable alleged [Firehouse] Marks" with the intent to procure an unfair competitive advantage over Scurmont, and that it has been injured. *Id.* ¶¶ 34-41.  Specifically, Scurmont alleges that Firehouse has engaged in said scheme to eliminate Scurmont as a provider of restaurant services and leave the public with fewer choices of restaurants in the Myrtle Beach market. *Id.* ¶ 39.  As to the alleged conduct's impact on public interest, Scurmont alleges that "[u]pon information and belief, Defendants have relied upon the alleged [Firehouse] Marks, which are invalid, to target and extract settlements unfairly from other small businesses" and that such conduct "adversely impact[s] the public interest and [is] capable of repetition." *Id.* ¶ 37.  If true, such alleged conduct could be offensive to public policy, unethical, or oppressive; and thus deemed "unfair."  Taking the factual allegations of the Amended Complaint as true, even if doubtful in fact, it is plausible that Firehouse has engaged in an unlawful trade practice because it has falsely stated its trademark rights, it has relied on invalid marks to coerce settlements out of small businesses, and its actions have damaged Scurmont.  Further, its scheme of advancing groundless trademark infringement claims is capable of repetition, and therefore, has an adverse impact on the public interest.  Thus, it is clear that Scurmont has pled sufficient facts to survive dismissal pursuant to Rule 12(b)(6).

*Scurmont's Third Cause of Action for Unfair Competition and Deceptive Trade Practices*

In its third cause of action, Scurmont alleges "Unfair Competition and Deceptive Trade Practices under the Common Law and the Lanham Act." *Amended Complaint,* p.13.  Specifically, Scurmont alleges "unfair competition under the common law," and "unfair competition, unfair practices, false representation and false description in violation of the Lanham Act, Section 43(a), 15 U.S.C. § 1125(a)." *Id.* ¶¶ 44 & 46.  However, even accepting Scurmont's factual allegations as true and considering those facts in the light

10

most favorable to Scurmont, the third cause of action in the Amended Complaint fails to state a claim upon which relief can be granted.

As an initial matter, courts in the Fourth Circuit have effectively found that there is no federal common law for unfair competition or deceptive trade practices. *See, e.g., Monoflo Int'l, Inc. v. Sahm*, 726 F. Supp. 121, 126-27 (E.D. Va. 1989) (finding no federal common law of unfair competition "separate or apart from the Lanham Act and the judicial decisions construing that Act"); *see Abcor Corp. v. AM Int'l, Inc.,* 916 F.2d 924, 931 (4th Cir. 1990) (stating "courts should be circumspect in converting ordinary business torts into violations of antitrust laws. To do so would be to create a federal common law of unfair competition which was not the intent of the antitrust laws") (internal quotation marks and citations omitted); *see also Lamparello v. Falwell,* 420 F.3d 309, 312 n.1 (4th Cir. 2005) (noting the district court construed any claim by plaintiff for violation of federal unfair competition law as a claim for violation of 15 U.S.C. § 1125 because "no such cause of action exists"). Accordingly, Plaintiff's third cause of action for unfair competition can arise only under the Lanham Act or the common law of South Carolina, which it does not as explained below.

Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) "does not have boundless application as a remedy for unfair trade practices. Because of its inherently limited wording, § 43(a) can never be a federal 'codification' of the overall law of 'unfair competition,' but can apply only to certain unfair trade practices prohibited by its text. *Dastar Corp. v. Twentieth Century Fox Film Corp.,* 539 U.S. 23, 29 (2003) (internal quotation marks and citations omitted). As such, § 43(a) prescribes two statutory causes of action in subsections (1)(A) and (1)(B):

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false

11

or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

The first of these two provisions, § 1125(a)(1)(A), creates a federal cause of action for trademark infringement. To state a claim under § 1125(a)(1)(A), a party must allege facts establishing "(1) that it possesses a mark; (2) that the defendant used the mark; (3) that the defendant's use of the mark occurred 'in commerce'; (4) that the defendant used the mark 'in connection with the sale, offering for sale, distribution, or advertising' of goods or services; and (5) that the defendant used the mark in a manner likely to confuse consumers." *People for the Ethical Treatment of Animals v. Doughney,* 263 F.3d 359, 364 (4th Cir. 2001); *see Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.,* 43 F.3d 922, 930 (4th Cir. 1995) (In order to prevail on claims of trademark infringement and unfair competition under the Lanham Act, a plaintiff must allege that "it has a valid, protectible trademark and that the defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers."). In the instant matter, Scurmont has not alleged that it has a valid protectible trademark, that Firehouse is infringing any of its trademarks or service marks, or that Scurmont has rights in the term FIREHOUSE superior to those owned

by Firehouse.  Moreover, Scurmont does not allege that Firehouse's use of the Firehouse Mark is likely to cause confusion among consumers.[4]

Section 1125(a)(1)(B) creates a federal cause of action for false advertising. To state a claim under this subsection, a claimant must allege that "(1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of the audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products" *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 272 (4th Cir. 2002); *see Nutrition & Fitness, Inc. v. Mark Nutritionals, Inc.*, 202 F. Supp. 2d 431, 435 (M.D.N.C. 2002) (noting that "[i]n order to form the base of a false advertising claim, the offending statement must be 'either false on its face or, although literally true, likely to mislead and confuse consumers given the merchandising context'") (citing *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1138 (4th Cir. 1993); *see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 564 F. Supp. 2d 544, 554 (E.D. Va 2008) (concluding that dismissal of false advertising claim was appropriate because the representations at issue did not constitute commercial advertising under the Lanham Act).

In the instant matter, the Amended Complaint alleges no facts to support a claim for false representation or false description under § 1125(a)(1)(B) of the Lanham Act. The only statements attributed to Firehouse were made directly to Scurmont in the June 6, 2008, cease and desist letter and the ensuing

---

[4] In fact, Scurmont effectively alleges that "there is no likelihood of confusion" between the Firehouse Mark and Calli Baker's name. *Amended Complaint,* ¶ 31.

13

settlement discussions. *See Amended Complaint,* ¶¶ 26-27.  As such, these statements were not made to any consumers or in the context of "commercial advertising or promotion" as contemplated by the Lanham Act. *See Nemet Chevrolet, Ltd.*, 564 F. Supp. 2d at 554 (noting that a representation is not "commercial advertising or promotion" if it is not "disseminated sufficiently to the relevant purchasing public to constitute advertising promotion within that industry.").  Significantly, Scurmont does not even allege that Firehouse made false statements to consumers in the context of commercial advertising or promotion.

Finally, Scurmont's allegations do not establish a claim for unfair competition under South Carolina common law.  Unfair competition requires proof of the <u>same</u> elements necessary to prove a claim under the Lanham Act. *See Shakespeare Co. v. Silstar Corp. of Am., Inc.,* 802 F. Supp. 1386, 1399 (D.S.C. 1992), *rev'd on other grounds,* 9 F.3d 1091 (4th Cir. 1993) (noting that the elements of common law unfair competition and trademark infringement under South Carolina law are identical to the elements for proving a Lanham Act claim); *cf. Long Star Steakhouse & Saloon, Inc.,* 43 F.3d at 930 n.10 ("The test for trademark infringement and unfair competition under the Lanham Act is essentially the same as that for common law unfair competition . . .") (applying Virginia law).  Since Scurmont has failed to state a claim upon which relief can be granted pursuant to 15 U.S.C. § 1125(a)(1)(A) or (1)(B), Scurmont's allegations concerning unfair competition under the common law fail as well.

*Scurmont's Fourth Cause of Action for Trademark Misuse*

In its Fourth cause of action, Scurmont alleges that Firehouse "ha[s] engaged in a scheme of advancing groundless trademark infringement claims based upon the invalid, abandoned and otherwise unenforceable alleged [Firehouse] Marks." *Amended Complaint,* ¶ 48. Scurmont further references sections 1 and 2 of the Sherman Antitrust Act and states that "Defendants' concerted conduct complained of herein

14

constitutes an improper and illegal restraint of trade or commerce in contravention of federal antitrust statutes." *Id.* ¶ 49.

To prove a violation of § 1 of the Sherman Antitrust Act, a party must establish two elements: "(1) There must be at least two persons acting in concert, and (2) the restraint complained of must constitute an unreasonable restraint on interstate trade or commerce." *Estate Constr. Co. v. Miller & Smith Holding Co., Inc.,* 14 F.3d 213, 220 (4th Cir. 1994); *see Dickson v. Microsoft Corp.,* 309 F.3d 193, 202 (4th Cir. 2002) (In order to establish a violation of § 1 of the Act, a plaintiff must establish: "(1) a contract, combination, or conspiracy; (2) that imposed an unreasonable restraint of trade."). It is well established that a plaintiff must plead sufficient facts as to each element of an alleged antitrust violation, and that the allegations must be stated in terms that are neither vague nor conclusory. *See, e.g., Estate Constr. Co.,* 13 F.3d at 220-21. Thus, "[a] mere allegation that 'the defendants violated the antitrust laws as to a particular plaintiff and commodity' is insufficient to survive a Rule 12(b)(6) motion." *Id.* at 221 (citation omitted).

In the instant matter, Scurmont has failed to factually allege any of the required elements of a § 1 claim in terms that are neither vague nor conclusory. Significantly, the Fourth Circuit has affirmed the dismissal of antitrust claims pursuant to Rule 12(b)(6) with regard to allegations that were far less deficient than Scurmont's fourth cause of action. For example, in *Estate Construction Company,* the Fourth Circuit upheld the district court's dismissal of a § 1 Sherman Act claim because the plaintiffs failed to provide (1) any factual support for their allegations that a conspiracy existed, (2) any "details of the time, place and alleged effect of the conspiracy," or (3) "any allegations of communications, meetings, or other means through which one might infer the existence of a conspiracy." *Id.* at 221. The plaintiffs further failed to state how the defendant's actions constituted a restraint of trade, and in particular, the court noted "a lack of any allegation of the market power of [Defendant] to restrain trade." *Id.* at 222. (citation omitted).

15

Finally, the court noted that the plaintiffs failed to allege any effect on interstate commerce as required under the Sherman Act. *Id.* Accordingly, the court upheld the district court's dismissal, stating that "[i]n effect, the [plaintiffs] merely reiterate mechanically the words of the Sherman Act without providing any 'sufficient facts so that each element of the alleged antitrust violation can be identified.'" *Id.*; *see Twombly,* 550 U.S. at 565-66 (noting that without more, even pleading "parallel conduct" is insufficient to suggest antitrust conspiracy and that a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show an illegal restraint of trade).

In the instant matter, the factual allegations pled by Scurmont are even more deficient than those alleged by the plaintiffs in *Estate Construction Company. See Estate Constr. Co.,* 14 F.3d at 221 n.15. In conclusory fashion, Scurmont merely alleges that the Defendants' conduct "constitutes an improper and illegal restraint of trade or commerce in contravention of federal antitrust statutes." *Amended Complaint,* ¶ 49. Like the plaintiffs in *Estate Construction Company,* Scurmont fails to allege a combination or conspiracy to restrain trade, fails to allege that Firehouse has market power sufficient to restrain trade, and fails to allege any effect on interstate commerce.[5] The Amended Complaint fails to state sufficient factual matter to state a claim that is plausible on its face and, thus, Scurmont has failed to state a claim pursuant to § 1 of the Sherman Act.[6]

_____

[5] Scurmont alleges only that "Defendants have engaged in a scheme of advancing groundless trademark infringement claims based upon the invalid, abandoned, generic and otherwise unenforceable alleged [Firehouse] Marks. *Amended Complaint,* ¶ 48.

[6] It should also be noted that the Supreme Court has concluded that "officers or employees of the same firm do not provide the plurality of actors imperative for a [Sherman Act] § 1 conspiracy." *Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 769 (1984). The Fourth Circuit has previously recognized that this general rule applied to a director and stockholder of a corporation. *See Greenville Pub'l Co. v. Daily Reflector, Inc.,* 496 F.2d 391, 399 (4th Cir. 1974). In the instant matter, Scurmont alleges in conclusory fashion, at most, that Firehouse conspired with two of its owners and

16

Scurmont also fails to state a claim for monopolization pursuant to § 2 of the Sherman Act. Section 2 states: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among several States . . . shall be deemed guilty of a felony . . . ." 15 U.S.C. § 2 (2006). Specifically, Scurmont fails to allege that Firehouse has an intent to create a monopoly in any given market. Moreover, without allegations regarding market power, Scurmont is unable to show a conspiracy to monopolize under § 2 of the Act. *See, e.g., Dickson,* 309 F.3d at 211 (dismissing § 2 claim for failing to allege facts showing market power or agreements which could have an anti-competitive effect and restrain trade, and noting that plaintiff's § 2 claim suffered the same deficiencies as its § 1 claim because claims under both sections require the same threshold showing). Accordingly, Scurmont's fourth cause of action fails to state a claim upon which relief can be granted.

### Scurmont's Fifth Cause of Action for Trademark Cancellation Due to Fraud

Scurmont's fifth cause of action alleges that Firehouse committed fraud on the United States Patent and Trade Office ("USPTO") and, therefore, the Firehouse Marks should be cancelled. Claims based upon fraudulent procurement of a patent or trademark registration must be pled with particularity as required by Rule 9(b).[7] *See King Auto., Inc. v. Speedy Muffler King, Inc.,* 667 F.2d 1008, 1010-11 (C.C.P.A. 1981) (holding that Rule 9(b) requires that pleadings contain "explicit rather than implied expression of the circumstances constituting fraud" and concluding that a petition lacked required allegations of fact to

---

officers.

[7] Rule 9(b) requires that plaintiffs plead "with particularity . . . 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (citations omitted); *see United States ex rel. Godfrey v. KBR, Inc.,* No. 08-1423, 2010 WL 55510, at *3 (4th Cir. Jan. 6, 2010).

support the belief that the trademark registrant knew of a third-party's right to use the trademark in commerce); *Rhone-Poulenc Agro S.A. v. Monsanto Co.,* 73 F. Supp. 2d 537, 538 (M.D.N.C. 1999) (noting that like any other allegation of fraud, an allegation of inequitable conduct before the USPTO is subject to the enhanced pleading requirements of Rule 9(b)); *Exergen Corp., v. Wal-Mart Stores, Inc.,* 575 F.3d 1312, 1328-29 (Fed. Cir. 2009) (concluding that to plead the circumstances of inequitable conduct with the requisite particularity under Rule 9(b), "the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the [USPTO].").

"Fraud on the [USPTO] in connection with trademark registration requires that the following elements be alleged and proven: (1) The challenged statement was a *false* representation regarding a *material* fact[;] (2) The person making the representation *knew* that the representation was false ('scienter')[;] (3) An *intent to deceive* the USPTO[;] (4) Reasonable *reliance* on the misrepresentation[; and] (5) *Damage* proximately resulting from such reliance." J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 31:61 (West 2010).[8] "Although 'knowledge' and 'intent' may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the [USPTO]." *Exergen Corp.,* 575 F.3d at 1328-29. Conclusory allegations that an intellectual property holder knew of a third-party's rights to use a mark or conclusory allegations concerning prior use of a mark are deficient. *King Auto.,* 667 F.2d at 1010-11. Additionally, even a material misrepresentation will not qualify as fraud under the Lanham Act warranting cancellation absent

---

[8] *See id.* ("**'Should Have Known' is Not the Standard.** Elements Nos. 2 and 3 cannot be satisfied by substituting a 'you should have known it was false' standard. Proof of knowledge of falsity and intent to deceive is always essential.").

18

the requisite intent to deceive the USPTO. *Id.* at 1011 n.4; *L.D. Kichler Co. v. Davoil, Inc.*, 192 F.3d 1349, 1352 (Fed. Cir. 1999) (noting that even if others' use was significant, in order to cancel the mark there must be a showing that a false declaration was submitted with the intent to deceive)  As such, a trademark is obtained fraudulently only if the applicant or registrant "knowingly makes a false, material representation with the intent to deceive the [USPTO]. *In re Bose Corp.,* 580 F.3d 1240, 1245 (Fed. Cir. 2009).

In *King Automotive,* a trademark registrant filed a petition with the USPTO declaring that, to the best of its knowledge, no third party had the right to use the mark at issue or a confusingly similar mark. 667 F.2d at 1010.  Subsequently, a competitor sought to cancel the mark under the Lanham Act alleging, among other things, that the registrant's statement was knowingly false and was made with "intent to deceive" the USPTO because the registrant had previously obtained a trademark search report showing a third party's use of a confusingly similar mark. In finding the pleading insufficient, the court held:

> Even if the disclosures in the trademark search report supported appellant's contention that [the registrant] knew of the alleged third-party use of MUFFLER KING . . . appellant's conclusory statement that [the registrant] knew its declarations to be untrue is not supported by a pleading of any facts which reflect [the registrant's] belief that the respective uses of MUFFLER KING and SPEEDY MUFFLER KING would be likely to confuse.

*Id.* at 1011.  In short, the court affirmed the motion to dismiss because the pleading "failed to allege sufficient underlying facts to support a reasonable inference that the registrant knew its statement to be false or that it intended to deceive the [USPTO]." *Exergen Corp.,* 575 F.3d at 1328 (citing *King Auto.,* 667 F.2d at 1011).

In the instant matter, the crux of Scurmont's fraud claim is that Firehouse submitted a false oath as to whether any other entity or person had the right to use the mark in order to obtain registration. *See Amended Complaint,* ¶¶ 52-57. Scurmont's sole allegation relating to the actual misrepresentation is as

19

follows: "[a]t the time Defendants filed the '462 and '045 applications, Defendants knew or should have known that there were many other pre-existing food and beverage businesses with the name FIREHOUSE or some substantially similar variation thereof." *Id.* ¶ 54.  However,

> A statement in an application or representation to the [USPTO] may be "false," without being "fraudulent."  Statements of honest, but perhaps incorrect belief or innocently made inaccurate statements of fact do not constitute "fraud."  Fraud requires proof of a knowingly false statement was made with an intent to deceive the [USPTO].

J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 31:66 (West 2010).  Significantly, Scurmont has failed to plead actual knowledge of a false statement with the intent to deceive. *See Exergen Corp.,* 575 F.3d at 1328-29.

Further, Scurmont cannot predicate its fifth claim on the conclusory allegation that Firehouse "knew or should have known" of other pre-existing businesses with similar names.  Scurmont relies heavily on the standard set forth in *Medinol Ltd. v. Neuro Vasx, Inc.,* 67 U.S.P.Q.2d 1205, 2003 WL 21189780 (T.T.A.B. 2003) to prove fraud in a trademark application.  "For six years, from the Trademark Board's 2003 decision in *Medinol,* to the Federal Circuit's 2009 decision in *Bose,* the Trademark Board adopted a 'should have known' rule.  Under the *Medinol* rule, the Board would find fraud even if there was no proof of actual knowledge of falsity or of an intent to deceive." J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 31:66 (West 2010).  However,

> [i]n its 2009 *Bose* decision, the Federal Circuit held that the Trademark Board's *Medinol* rule erroneously lowered the standard for fraud to a simple negligence standard . . . [and held] that a trademark is obtained fraudulently under the Lanham Act <u>only if the applicant or registrant knowingly makes a false, material representation with the intent to deceive</u> the [USPTO].  Subjective intent to deceive, however difficult it may be to prove, is an indispensable element in the analysis.

*Id.* (emphasis added).

20

Scurmont has failed to allege "sufficient underlying facts to support a reasonable inference that [Firehouse] knew its statement to be false or that it intended to deceive the [USPTO]." *Exergen Corp.,* 575 F.3d at 1328. When "allegations of fraud are not sufficiently particularized, the proper remedy is not to dismiss the case, but to require the pleader to amend to correct the deficiency." J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 20:58 (West 2010). Accordingly, the Court denies *without prejudice* Firehouse's motion to dismiss Scurmont's fifth cause of action for failing to plead fraud with specificity, but grants Firehouse's motion for a more definite statement as to this claim.

*Scurmont's Sixth Cause of Action for Trademark Cancellation Due to Prior Usage By Others*

In its sixth cause of action, Scurmont appears to contend that two of Firehouse's federal service mark registrations, numbers 1,903,135 (the "135 registration") and 3,173,030 (the "030 registration") should be cancelled because third parties may have registered or commenced use of a similar mark prior to Firehouse. *See Amended Complaint,* ¶¶ 61-64. Specifically, Scurmont contends that the two registrations should be invalidated pursuant to 15 U.S.C. § 1052(d) ("Section 2(d)") because of prior usage of "other [unidentified] businesses, including other restaurants, throughout the United States." *Id.* ¶ 63.

Firehouse argues that Scurmont's sixth cause of action is a "prior user defense," which is not a cognizable basis for invalidating a federal trademark registration, because Scurmont attempts to assert the rights of other unidentified third parties. However, according to Scurmont, its sixth cause of action "states usage of the same or similar marks by third parties to show that Defendants committed fraud in the federal trademark application process." *Scurmont's Response*, p.22. Specifically, Scurmont states:

> Defendants are confused and mistaken. Calli Baker's does not assert third party rights. Instead, it states usage of the same or similar marks by third parties to show that Defendants committed fraud in the federal trademark application process and/or in other communications before the USPTO.

21

*Id.*  Similar to its fifth cause of action, to the extent that Scurmont's sixth cause of action requests cancellation based on fraud, it fails to state a claim due to the lack of particularity required to plead fraud.

This deficiency is clear even when argued by Scurmont in its Response to Firehouse's Motion to Dismiss Amended Complaint.  In arguing that its sixth cause of action is proper, Scurmont states:

> Defendant [Firehouse] and/or its predecessor in interest and/or its designated representative, represented to the USPTO that Defendants had exclusive rights to use the marks under the '135 registration and the '030 registration by signing and presenting trademark applications, declarations and other papers as truthful to the USPTO . . . . However . . . Defendants do not have exclusive rights purported to flow from the '135 registration and the '030 registration due to dozens of instances of third party prior uses, many of which are on-going.

*Id.*  Like the allegations pled in its Amended Complaint, Scurmont's above summation of those allegations is woefully deficient in terms of particularity.  Specifically, Scurmont fails to allege facts to support (1) what other businesses or restaurants used similar marks prior to Firehouse; (2) that Firehouse knew of these prior users; (3) that the alleged misrepresentation was made knowingly and with the intent to deceive the USPTO; (4) who made the alleged misrepresentation; and (5) what was obtained by the alleged misrepresentation. *See, e.g., Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999); *Exergen Corp., v. Wal-Mart Stores, Inc.,* 575 F.3d 1312, 1328-29 (Fed. Cir. 2009).  Because the sixth cause of action requests cancellation due to fraud in the federal trademark application process, it is redundant and duplicative of Scurmont's fifth cause of action, which the Court has already addressed appropriately.

**II:  The Sorensens' Motion to Dismiss Plaintiff's Amended Complaint And/Or  For More Definite Statement [Docket #28]** ("Sorensens' Motion to Dismiss").  In their motion, the Sorensens move to dismiss the Amended Complaint as it relates to them because, among other arguments, (1) this Court lacks personal jurisdiction over them pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, and (2)

Scurmont has failed to state a claim against the Sorensens pursuant to Rule 12(b)(6) because they cannot be held vicariously liable for the acts alleged against Firehouse.

### Personal Jurisdiction

According to the Sorensens, "[t]his Court should dismiss [the Sorensens] pursuant to Rule 12(b)(2), Federal Rule of Civil Procedure, for lack of personal jurisdiction." *Sorensens' Motion to Dismiss,* pp.8-9. When a defendant challenges personal jurisdiction, the plaintiff has the burden of proving the facts necessary to support personal jurisdiction. *Sheppard v. Jacksonville Marine Supply, Inc.*, 877 F. Supp. 260, 264 (D.S.C. 1995). In analyzing jurisdictional challenges against multiple defendants, the court must consider *each defendant* separately. *Id.* (emphasis added). The "showing of personal jurisdiction must be based on specific facts set forth in the record in order to defeat defendants' motion to dismiss." *Magic Toyota, Inc. v. Southeast Toyota Distribs., Inc.*, 784 F. Supp. 306, 310 (D.S.C. 1992) (granting individual defendant's motion to dismiss for lack of personal jurisdiction where plaintiffs failed to allege specific jurisdictional facts pertaining to each of the four nonresident corporate officers and directors); *Sheppard*, 877 F. Supp. at 267 (granting defendant vice-president's motion to dismiss for lack of personal jurisdiction where the plaintiffs failed to allege specific minimum contacts from which plaintiffs' cause of action arose). "In reviewing the record before it, a court may consider pleadings, affidavits, and other evidentiary materials without converting the motion to dismiss to a motion for summary judgment." *Magic Toyota, Inc.,* 784 F. Supp. at 310 (quotation omitted).

When a district court decides a pretrial motion to dismiss based upon personal jurisdiction without holding an evidentiary hearing, a plaintiff need only make a *prima facie* showing of personal jurisdiction. *See Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 60 (4th Cir. 1993). "In deciding whether the plaintiff has proved a *prima facie* case of personal jurisdiction, the district court must draw all reasonable inferences

arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Id.* In the instant matter, Scurmont has made a *prima facie* showing that Robin Sorensen has the requisite minimum contacts that figure into Scurmont's SCUTPA cause of action to allow this Court to exercise personal jurisdiction over him, but has failed to make a *prima facie* showing of personal jurisdiction over Chris Sorensen.

Scurmont asserts jurisdiction over the Sorensens pursuant to S.C. Code Ann. §§ 36-2-802 & 803. Under the South Carolina Long-Arm Statute, personal jurisdiction of a non-resident individual cannot rest on the mere fact that a person is an officer or employee of a defendant corporation. *Columbia Briargate Co. v. First National Bank in Dallas*, 713 F.2d 1052, 1064-65 (4th Cir. 1983) ("[I]f the claim against the corporate agent rests on nothing more than that he is an officer or employee of the non-resident corporation and if any connection he had with the commission of the tort occurred without the forum state, we agree that, under sound due process principles, the nexus between the corporate agent and the forum state is too tenuous to support jurisdiction over the agent personally . . . under the long-arm statute."). Instead, "[w]hat is required is some showing of direct, personal involvement by the corporate officer in some decision or action which is causally related to the plaintiff's injury." *Magic Toyota, Inc.,* 784 F. Supp. at 315 (quotation omitted). Jurisdiction under the South Carolina Long-Arm Statute extends to the "outermost limit" possible under the Due Process Clause. *Foremost Pipeline Constr. Co. v. Ford Motor Co.*, 420 F. Supp. 647, 648 (D.S.C. 1976); *see Southern Plastics Co. v. Southern Commerce Bank,* 423 S.E.2d 128, 130-31 (S.C. 1992) (interpreting the South Carolina Long-Arm Statute to be coextensive with the constitutional limits of the Due Process Clause). Thus, the court must determine whether exercise of jurisdiction would offend due process. *See Foster v. Arletty 3 Sarl,* 278 F.3d 409, 414 (4th Cir. 2002). Under the constitutional analysis of due process, a court may exercise jurisdiction over an out-of-state defendant who has sufficient "minimum contacts with [the forum] such that the maintenance of the suit

does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). The minimum contacts requirement may be satisfied through either general or specific personal jurisdiction.

The Fourth Circuit reiterated the proper constitutional test for personal jurisdiction in *Lesnick v. Hollingsworth & Vose Co.,* 35 F.3d 939 (4th Cir. 1994). The court stated:

> [W]e hold that the test to be applied in considering the reach of personal jurisdiction inquires whether (1) the defendant has created a substantial connection to the forum state by action purposefully directed toward the forum state or otherwise invoking the benefits and protections of the laws of the state; and (2) the exercise of jurisdiction based on those minimum contacts would not offend traditional notions of fair play and substantial justice, taking into account such factors as (a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interest in obtaining relief, (d) the efficient resolution of controversies as between states, and (e) the shared interests of the several states in furthering fundamental substantive social policies.

*Id.* at 945-46 (citations omitted).

The Fourth Circuit has synthesized the specific personal jurisdiction inquiry into the following three factors: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric Ltd.,* 561 F.3d 273, 278 (4th Cir. 2009) (citation omitted). The decision in *Sheppard v. Jacksonville Marine Supply, Inc.*, 877 F. Supp. 260, 264 (D.S.C. 1995) demonstrates the types of minimum contacts which are sufficient to establish specific personal jurisdiction in this district. *Sheppard* involved an action brought by a number of investors. The court determined that it could exercise specific jurisdiction over an individual defendant (a corporate officer) where the defendant met with the plaintiff to discuss the subject investment within the State of South Carolina, made numerous phone calls

25

to South Carolina to discuss the matter, and discussed the investment in Charleston with the Plaintiff and his wife. *Sheppard,* 877 F. Supp. at 265.  The court determined that the corporate officer had created a substantial connection to South Carolina and in so doing had purposefully availed himself of the privilege of conducting business in the State. In contrast, the court declined to exercise personal jurisdiction over the corporation's vice president because he did not negotiate the financial transaction at issue and rarely traveled to South Carolina. *Id.* at 266. The court concluded that the plaintiffs had not "made any specific allegations against [the vice-president] that connect him significantly to their causes of action." *Id.*

Where the plaintiff's cause of action does not arise out of the defendant's purposeful forum contacts, general personal jurisdiction can be predicated only on a level of minimum contacts "significantly higher than for specific jurisdiction." *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 624-25 (4th Cir. 1997).  With these tests in mind, the Court will consider the facts of the instant matter to determine whether South Carolina can assert personal jurisdiction over Robin or Chris Sorensen.

In the Amended Complaint, Scurmont makes essentially three allegations concerning the Sorensens: (1) that the Sorensens are owners, officers, and operators of Firehouse; (2) that they have "engaged in unfair business practices by advancing meritless claims"; and (3) that they receive a direct benefit from Firehouse's wrongful conduct. *Amended Complaint,* ¶ 20.  These allegations fail to specify how the Sorensens have subjected themselves individually to personal jurisdiction in South Carolina.  The Amended Complaint also fails to specify any direct personal involvement by either of these individuals in any conduct causally related to Scurmont's alleged injury.  However, the affidavit of Robin Sorensen states:

> In my capacity as an employee of Firehouse, I travel to the State of South Carolina approximately four times each year to visit *FIREHOUSE SUBS* restaurant franchises in that state or as part of traveling to another state in connection with Firehouse's business.  During those trips, I visit *FIREHOUSE SUBS* restaurant locations and speak with Firehouse's

26

franchisees and with area representatives. None of these trips were related
to this lawsuit.

*Sorensens' Motion to Dismiss*, Robin Sorensen Aff. ¶ 6. The affidavit of Chris Sorensen is identical, except

he states that he travels to the State of South Carolina approximately two times each year. *Sorensens'*

*Motion to Dismiss*, Chris Sorensen Aff. ¶ 6. Additionally, Scurmont attached an affidavit to its Response

in Opposition to the Sorensens' Motion to Dismiss, stating that:

> On January 21, 2009, Robin Sorensen called me to discuss the dispute
> between Calli Baker's and Firehouse Subs. During that conversation, Mr.
> Sorensen told me he had been in my bar before. He did not say when. He
> also said that he had "been through this battle before," and "everyone wants
> to do battle" but "they always fold at the eleventh hour" or words to that
> effect. Mr. Sorensen told me that I needed to either accept a settlement on
> his terms or go to court. Mr. Sorensen also stated during that conversation
> that if the parties could not settle, "we will bleed you dry."

*Response in Opposition*, Heath Scurfield Aff. ¶ 3.[9]

In the instant matter, the Court finds that Scurmont has demonstrated a *prima facie* case that South

Carolina has personal jurisdiction over Robin Sorensen. Robin Sorensen is the president of Firehouse.

Even though he is a Florida resident, he is the owner and operator of the corporation's franchise operations

and states in his affidavit that he travels to South Carolina approximately four times a year in this capacity

to speak with Firehouse franchisees. More specifically, Heath Scurfield states in his sworn affidavit that

Robin Sorensen called him in South Carolina and indicated that Scurmont needed to accept a settlement

in lieu of litigation. Scurmont's SCUTPA claim is based on allegations that "Defendants have engaged in

a scheme of advancing groundless trademark infringement claims" and have "relied upon the alleged

---

[9] Robin Sorensen denies threatening Heath Scurfield, but admits to engaging in several
telephone conversations with him between July 2008 and February 2009 to discuss a
resolution of the trademark dispute. *Sorensens' Motion to Dismiss*, Robin Sorensen Aff.
¶ 6. Significantly, Robin Sorensen admits that he offered to pay the Plaintiff $25,000.00
on behalf of Firehouse to avoid this litigation. *Reply*, Robin Sorensen Dec. ¶¶ 4-5.

27

[Firehouse] Marks, which are invalid, to target and extract settlements unfairly" from small businesses. *Amended Complaint,* ¶¶ 34 & 37. Arguably, Scurmont's SCUTPA claim arises, at least in part, out of these alleged phone calls by Robin Sorensen. Construing Scurmont's written allegations of jurisdiction in its favor, this Court finds that Scurmont has made a *prima facie* showing of personal involvement by Robin Sorensen in an action which is causally related to Scurmont's SCUTPA cause of action and that Robin Sorensen has created a substantial connection to South Carolina and purposefully availed himself of the privilege of conducting business in this state.[10] Additionally, this Court finds that exercising personal jurisdiction over Robin Scurmont does not offend the traditional notions of fair play and substantial justice.

In contrast, Heath Scurfield's affidavit does not contain specific allegations indicating that Chris Sorensen had direct or personal involvement in any of the acts giving rise to the six asserted causes of action. *See Magic Toyota*, 784 F. Supp. at 313 (granting motion to dismiss over individual defendants where defendants submitted affidavits establishing lack of sufficient contacts and where plaintiff included only vague, conclusory references to the defendants from which the court could not discern any contacts with the forum). Moreover, the declarations submitted by Chris Sorensen demonstrate that, although he is a corporate officer of Firehouse, he travels to South Carolina infrequently in that capacity and had no direct, personal involvement in any decision or action causally related to this lawsuit or Scurmont's alleged injury. *See id.* at 314 (finding that personal jurisdiction could not be asserted over individual defendants where the plaintiff referred to the defendants collectively in the complaint and did not even attempt to address the acts

---

[10] The United States Supreme Court, the South Carolina Supreme Court, and lower federal courts construing cases arising in South Carolina have all held that a single contact with this state is sufficient to give the forum personal jurisdiction over the defendant when the contact gives rise to, or figures prominently in, the cause of action under consideration. *Long v. Baldt,* 464 F. Supp. 269, 275 (D.S.C. 1979) (citing *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220 (1957)); *Hardy v. Pioneer Parachute Co.,* 531 F.2d 193 (4th Cir. 1976); *Ross v. Am. Income Life Ins. Co.,* 102 S.E.2d 743 (S.C. 1958).

28

committed by *each* defendant); *see also Sheppard*, 877 F. Supp. at 266 (finding that exercising personal jurisdiction over corporate vice president would not comport with the Due Process Clause where the vice president did not negotiate the financial transaction at issue and rarely travels to the state, and the plaintiffs did not make any specific allegations connecting him significantly to their causes of action).  In this case, other than general conclusory allegations against the Defendants collectively, Scurmont has not pled specific facts supporting the proposition that Chris Sorensen committed any wrongful acts within the State of South Carolina, let alone any wrongful acts causally related to Scurmont's alleged injuries.  Thus, Scurmont has failed to make a *prima facie* showing of specific personal jurisdiction over Chris Sorensen.

In addition, Scurmont has failed to allege facts which would establish general personal jurisdiction over Chris Sorensen.  Where the plaintiff's cause of action does not arise out of the defendant's purposeful forum contacts, general jurisdiction can be predicated only on a level of minimum contacts "significantly higher than for specific jurisdiction." *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 624-25 (4th Cir. 1997).  As discussed above, Chris Sorensen's very limited contact with the State of South Carolina is wholly insufficient to establish specific jurisdiction, let alone general jurisdiction. Accordingly, this Court lacks personal jurisdiction over Chris Sorensen.

*Failure to State a Claim against the Sorensens pursuant to Rule 12(b)(6)*

Nonetheless, dismissal of the Amended Complaint against both Robin and Chris Sorensen is appropriate because Scurmont has failed to plead allegations sufficient to state a claim against them as individual defendants pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and they "cannot be held vicariously liable for the acts alleged against Defendant Firehouse." *Sorensens' Motion to Dismiss,*

p.1.[11]  In considering the Sorensens' Rule 12(b)(6) motion, the Court has considered only the pleadings.[12]

The United States Supreme Court recently stated that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal* 129 S. Ct. 1937, 1949 (U.S. 2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Id.* (quoting *Twombly,* 550 U.S. at 557).  While a court accepts the factual allegations in the complaint as true and considers those facts in the light most favorable to a plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts. Inc. v. J.D. Assocs. LLP,* 213 F.3d 175, 180 (4th Cir. 2000).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. *Iqbal,* 129 S. Ct. at 1949.  As such, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly,* 550 U.S. at 555 (citations omitted).  "A claim has facial

---

[11] Dismissal is appropriate on this ground even assuming, *arguendo,* that Scurmont has sufficiently pled a *prima facie* showing of personal jurisdiction over Chris Sorensen.

[12] *See Ashcroft v. Iqbal* 129 S. Ct. 1937, 1949 (U.S. 2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007))); *see generally Mincey v. World Savings Bank, FSB,* 614 F. Supp. 2d 610, 625 (D.S.C. 2008) ("A memorandum in opposition or response . . . cannot remedy the defects in a party's complaint.").

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S. Ct. at 1949. However, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Id.* (quoting *Twombly,* 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly,* 550 U.S. at 555 (citations omitted).

Further, the Supreme Court of South Carolina has clearly held that "[a]n officer, director, or controlling person in a corporation is not, merely as a result of his or her status as such, personally liable for the torts of the corporation. *Rowe v. Hyatt*, 468 S.E.2d 649, 650 (S.C. 1996) (holding that the sole shareholder, president, and director of the corporate co-defendant was not personally liable under South Carolina's Regulation of Manufacturers, Distributors and Dealers Act); *Hunt v. Rabon*, 272 S.E.2d 643, 644 (S.C. 1980) (dismissing hospital board of trustees from medical malpractice claim because the "allegations in the complaint linking the members of the board of trustees with the tortious act [were] legally insufficient to hold them liable for the wrongs alleged"); *see Griffin v. Heinitsh*, 309 F. Supp. 1028, 1033 (D.S.C. 1970) ("[T]he mere fact that the defendant was an officer and substantial stockholder will not make him personally responsible for the acts of the corporation, absent some showing to justify piercing the corporate veil and showing that the corporation was the mere alter ego of the defendant."). To incur liability, "the officer, director, or controlling person must ordinarily be shown to have in some way participated in or directed the tortious act." *Rowe*, 468 S.E.2d at 650; *cf. Ashcroft,* 129 S. Ct. at 1948 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

31

In the instant matter, Scurmont has not pled facts in the Amended Complaint to suggest that the Sorensens had any direct personal involvement in Firehouse's alleged wrongful acts. The Amended Complaint contains only a single paragraph addressing Robin and Chris Sorensen's involvement in each of the six causes of action. That paragraph imputes liability to them for **Firehouse's wrongful conduct** merely because of their association with Defendant Firehouse:

> Defendants Chris Sorensen and Robin Sorensen, *as the owners, officers, and operators* of Defendant Firehouse Restaurant Group, Inc., have unfairly targeted small businesses, including the Plaintiff, for alleged trademark infringement, and have engaged in unfair business practices by advancing meritless claims. Furthermore, *as owners* of the Defendant [Firehouse], Defendants Chris Sorensen and Robin Sorensen receive direct benefit from *[Firehouse's]* wrongful conduct as alleged herein.

*Amended Complaint*, ¶ 20 (emphasis added). As pled, the Amended Complaint does not differentiate between the Defendants or contain any facts establishing how the Sorensens specifically participated in or directed any of the acts alleged against Firehouse. Instead, Scurmont appears to impute liability vicariously to the Sorensens as the "owners, officers, and operators of Defendant Firehouse." *Amended Complaint,* ¶ 20. Because Scurmont has not pled facts to suggest that the Sorensens had any direct or personal involvement in Firehouse's alleged wrongful acts, the Amended Complaint fails to state a claim against them as individual defendants. *See Thomas v. Finneran,* No. 7:09CV00354, 2009 WL 2588348, at *3 (W.D. Va. Aug. 20, 2009) (dismissing owners, officers, and shareholders of a corporation where the complaint lacked "any specific factual support for the allegation that the corporation's officers or shareholders themselves engaged in activities [at issue], and stating the "factual allegations are not enough to raise [plaintiff's] claim to relief 'above the speculative level' or to state a claim against the individual defendants 'that is plausible on its face.'"); *cf. Mincey v. World Savings Bank, FSB,* 614 F. Supp. 2d 610, 623 (D.S.C. 2008) (granting a 12(b)(6) motion where the plaintiffs' amended complaint alleged very little

against the individual subsidiary defendants other than their corporate relationship to the corporate defendant and the remaining allegations simply stated legal conclusions without any factual allegations).

As to Scurmont's surviving cause of action against Firehouse pursuant to SCUTPA, the Amended Complaint references the "Defendants" collectively in each factual allegation. In *Mincey*, the court specifically found that the plaintiffs could not hold the individual subsidiary defendants liable under SCUTPA simply because they were related to the corporate defendant, as Scurmont is attempting to do in the instant matter. *See Mincey*, 614 F. Supp. 2d at 628 ("Plaintiffs are seeking to hold Golden West and Wachovia liable on a number of theories- such as agency and joint venture- but as noted above, there are simply no factual allegations in the Amended Complaint to support these theories. For this reason, the court concludes the SCUTPA claim fails."); *cf. Magic Toyota*, 784 F. Supp. at 314 (finding that personal jurisdiction could not be asserted over individual defendants where the plaintiff referred to "the defendants" collectively in the complaint and did not even attempt to address the acts committed by *each* defendant).

Further, Scurmont has failed to plead any allegations to permit the Court to disregard Firehouse's corporate status, pierce its corporate veil, and hold two of its officers and owners liable. *See Buschi v. Kirven,* 775 F.2d 1240, 1252 (4th Cir. 1985) ("Simply joining corporate officers as defendants in their individual capacities is not enough to make them persons separate from the corporation in legal contemplation. The Plaintiff must also allege that they acted other than in the normal course of their corporate duties."); *see also Mincey*, 614 F. Supp. 2d at 623 (At the initial pleading stage, allegations that are vague and conclusory with respect to piercing the corporate veil "do not suffice."). Simply put, personal liability on behalf of a corporate officer or director rather than the corporation is "an unusual and extraordinary event." *Steinke v. Beach Bungee, Inc.*, 105 F.3d 192, 196 (4th Cir. 1997) (noting that a corporation is created to limit personal liability).  Under the facts alleged, Scurmont's SCUTPA allegation

33

represents a matter for which the corporation may be responsible, but for which no responsibility can plausibly attach to the Sorensens individually. Because Scurmont has failed to plead factual content that allows the court to draw the reasonable inference that the Sorensens are individually liable for the SCUTPA cause of action, the Amended Complaint should be dismissed against the Sorensens. *See Ashcroft*, 129 S. Ct. at 1949.

**III:  Plaintiffs' Motion to Dismiss Defendants' Counterclaims, To Strike Defenses And/Or For More Definite Statement** **[Docket #20, Firehouse Lawsuit]** ("Motion to Dismiss Counterclaims").  In the Firehouse Lawsuit, Plaintiffs Firehouse, Three Alarm, and Fireside (collectively "Firehouse" hereinafter) have filed a Motion to Dismiss Defendants' (Scurmont and Heath Scurfield) counterclaims, to strike several of their defenses and/or for a more definite statement to the Answer and counterclaims of the defendants. The Court will address Firehouse's arguments separately.

First, Firehouse claims that Defendants' six counterclaims should be dismissed.  The Court notes that the six counterclaims asserted against Firehouse in this lawsuit ("Firehouse Lawsuit") are identical to the six causes of action Scurmont asserts against Firehouse in the Scurmont Lawsuit.[13]  Further, Firehouse's arguments for dismissal of those claims are the same in both lawsuits.  The Court hereby adopts its analysis of those claims in the first section of this Order regarding Firehouse's Motion to Dismiss Plaintiff's Amended Complaint.  As such, the "Third Cause of Action By Way of Counterclaim (Unfair Competition and Deceptive Trade Practices under the Common Law and the Lanham Act)", the "Fourth Cause of Action

---

[13] Scurmont admits this fact in its Motion to Consolidate [Docket #18, Scurmont Lawsuit], p.2, n.1 ("Out of abundance of caution, plaintiff herein asserted as counterclaims in the second-filed action the same claims that have been asserted in the Complaint in the first-filed action.  If the actions are consolidated, plaintiff does not intend to try the same claims twice, as defendants have absurdly suggested.").  The two lawsuits were, in fact, consolidated by Order on January 8, 2010.

By Way of Counterclaim (Trademark Misuse)", and the "Sixth Cause of Action By Way of Counterclaim (Trademark Cancellation Due to Prior Usage By Others)" are dismissed.  The Court grants Firehouse's motion for a more definite statement as to the "Fifth Cause of Action By Way of Counterclaim (Trademark Cancellation Due to Fraud)."

Next, Firehouse argues that "Defendants' First Defense, its 'Reservation and Non-Waiver,' and its 1st, 2nd, 3rd, 6th, 7th, 11th, and 12th Affirmative Defenses Should be Stricken." *Motion to Dismiss Counterclaims,* p.23.  Rule 12(f) of the Federal Rules of Civil Procedure permits a district court, on motion of a party, to "order stricken from any pleading any insufficient defense." *Waste Mgmt. Holdings, Inc. v. Gilmore,* 252 F.3d 316, 347 (4th Cir. 2001)  Rule 12(f) motions are generally viewed with disfavor "because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *Id.* (citing 5A  A. Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1380, 647 (2d ed. 1990)).  Nevertheless, "a defense that might confuse the issues in the case and would not, under the facts alleged, constitute a valid defense to the action can and should be deleted." *Id.*  Further, if a party pleads a defense which "in law constitutes no defense," it may be stricken. *Schenley Distillers Corp. v. Renken,* 34 F. Supp. 678, 684 (E.D.S.C. 1940).

In the instant matter, the Court denies the motion as to the Defendants' First Defense and its 1st, 2nd, 7th, 11th, and 12th Affirmative Defenses; however, no argument or response has been offered by the Defendants to refute Firehouse's arguments that the 3rd and 6th Affirmative Defenses fail as a matter of law. Defendants' third affirmative defense asserts a "copyright protection" defense and its sixth affirmative defense asserts a "prior user" defense.  For the reasons set forth below, neither "defense" is a cognizable defense; therefore, both are stricken.

The Copyright Act preempts only rights "that are equivalent to any of the exclusive rights within the general scope of copyright." 17 U.S.C. § 301(a); *U.S. ex rel. Berge v. Bd. of Trs. of the Univ. of Ala.*, 104 F.3d 1453, 1463 (4th Cir. 1997); *see Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 229 (4th Cir. 1993) ("§ 301(a) preempts state-law claims if the work is within the scope of the subject matter of copyright as specified in 17 U.S.C. §§ 102, 103 and the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright law as set out in 17 U.S.C. § 106.") (internal quotation marks and citations omitted). Defendants' third affirmative defense states, "[t]he state law claims for trademark infringement and unfair competition are preempted by 17 U.S.C. § 301." *Answer,* p.9. However, trademark and unfair competition claims under South Carolina law are excluded from the scope of copyright preemption because these common law claims are founded on the identical elements of the analogous Lanham Act claims. *See Shakespeare Co. v. Silstar Corp. of Am., Inc.,* 802 F. Supp. 1386, 1399 (D.S.C. 1992), *rev'd on other grounds,* 9 F.3d 1091 (4th Cir. 1993) ("The elements of trademark infringement and unfair competition under South Carolina common law are identical to the elements for those claims under the Lanham Act."). As a matter of law, "[t]he federal Copyright Act does not preempt the federal Lanham Act, or vice-versa." *Alameda Films SA de CV v. Authors Rights Restoration Corp.*, 331 F.3d 472, 482 (5th Cir. 2003); *see Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 721 (9th Cir. 2004) (denying copyright preemption of state law trademark claims because "[c]opyright and trademark are related but distinct property rights, evidenced by different federal statutes governing their protection"); *cf. Sears, Roebuck and Co. v. Sears Realty, Co.*, 932 F. Supp. 392, 400 (N.D.N.Y. 1996) ("Congress has not preempted the area of common law trademark."); *Scan-Plast Indus., Inc. v. Scanimport Am., Inc.*, 652 F. Supp. 1156, 1165 (E.D.N.Y. 1987) ("Although, Congress has preempted state remedies in the areas of patent and copyright, it has not done so in the area of trademark and unfair competition."); *U-Neek, Inc.*

*v. Wal-Mart Stores, Inc.*, 147 F. Supp. 2d 158, 174 (S.D.N.Y. 2001) (holding that common law unfair competition claims requiring proof of confusion incorporate the "extra element" necessary to exempt such claims from copyright preemption).

Further, Defendants' sixth affirmative defense does not state a legally grounded defense. Defendants state in this defense, "[p]laintiffs' claims are barred, in whole or in part, by prior use and/or registration of 'FIREHOUSE' marks of unrelated parties." *Answer,* p.10. However, these "unrelated parties" that allegedly registered or commenced use of a similar mark prior to Firehouse do not include Calli Baker's, and Defendants make no such allegation.[14]  *Cf. Colony Foods, Inc. v. Sagemark, Ltd.,* 735 F.2d 1336 (Fed. Cir. 1984) (stating that possible rights of a third party do not give the petitioner standing to cancel the registration).  "In the context of a trademark infringement suit, a claim by defendant that a third party has rights in the mark superior to plaintiff is . . . a *jus tertii* defense." *Bambu Sales, Inc. v. Sultana Crackers, Inc.,* 683 F. Supp. 899, 909 (E.D.N.Y. 1988).  As a matter of law, federal courts have categorically barred *jus tertii* defenses as a basis to challenge trademark registrations. *See, e.g., Marshak v. Sheppard,* 666 F. Supp. 590 (S.D.N.Y. 1987) (rejecting a *jus tertii* defense that the trademark infringement plaintiff's rights were inferior to those of a third party); *Capetola v. Orlando,* 426 F. Supp. 616, 617-18 (E.D. Pa. 1977) (issuing a general prohibition against asserting *jus tertii* as a trademark infringement defense, reasoning that the defendants lacked standing to assert the rights of another) (citing *Gilmore v. Utah,* 429 U.S. 1012 (1976) (Burger, C.J., concurring)).  The USPTO similarly has rejected the prior user defense in administrative proceedings seeking cancellation of trademark registrations. *See, e.g., Stock Pot Restaurant, Inc. v. Stockpot, Inc.,* 737 F.2d 1576, 1581 (Fed. Cir. 1984) (disallowing a *jus tertii*

---

[14] Calli Baker's use of the term FIREHOUSE began in 2005, while Firehouse applied for registration of its '135 and '030 registrations in 1993 and 2003, respectively.

defense in cancellation proceeding, reasoning that "the conflict here is between petitioner [appellee] and respondent [appellant] and not between petitioner and the world") (citations omitted); *Krug Vins Fins de Champagne v. Rutman Wine Co.,* 197 U.S.P.Q. 572 (TTAB 1977) (rejecting a *jus tertii* defense in a cancellation proceeding and reasoning that "the conflict [] is between petitioner and respondent and not between petitioner and the world"). As such, Defendants' sixth affirmative defense is stricken.

### Conclusion

For the foregoing reasons, the Court **GRANTS** in part, **DENIES** in part, Firehouse's Motion to Dismiss Plaintiff's Amended Complaint And/Or For More Definite Statement [Docket #14] in the Scurmont Lawsuit, case No. 4:09-cv-00618-RBH. Accordingly, Scurmont's Third, Fourth, and Sixth causes of action are dismissed. Firehouse's motion for a more definite statement as to Scurmont's Fifth cause of action is granted.

Further, the Court **GRANTS** Robin and Chris Sorensen's Motion to Dismiss Plaintiff's Amended Complaint [Docket #28] in the Scurmont Lawsuit pursuant to Rule 12(b)(6).

Finally, the Court **GRANTS** in part, **DENIES** in part, Plaintiffs' Motion to Dismiss Defendants' Counterclaims, To Strike Defenses And/Or For More Definite Statement [Docket #20] in the Firehouse Lawsuit, case No. 4:09-cv-00673-RBH. Accordingly, the Third, Fourth, and Sixth causes of action by way of counterclaim are dismissed. The Court grants Firehouse's motion for a more definite statement as to the Fifth cause of action by way of counterclaim. Moreover, the Defendants' Third and Sixth affirmative defenses are stricken from the Answer.

As these two (2) cases have been consolidated and Scurmont has indicated that the only reason it filed counterclaims in the Firehouse Lawsuit was out of an abundance of caution, **AND** as this Court has now determined that the Scurmont Lawsuit was a properly filed "first" lawsuit; the Court believes, that for

an orderly disposition of the case, that all future filings shall be done under Civil Action No. 4:09-cv-00618-RBH.  Further, the parties shall be realigned in this dispute so that (1) Scurmont LLC, d/b/a Calli Baker's Firehouse Bar & Grill and (2) Heath Scurfield, an individual, are designated as <u>Plaintiffs</u>, **AND** (1) Firehouse Restaurant Group, Inc., a Florida Corporation, (2) Three Alarm Subs, Inc., a South Carolina corporation, and (3) Fireside Restaurant Company, Inc., a South Carolina corporation are designated as <u>Defendants</u>; nonetheless, the parties may use their existing pleadings except those portions that have been dismissed or stricken by this Order.

  **IT IS SO ORDERED.**

          s/ R. Bryan Harwell
          R. Bryan Harwell
          United States District Judge

May 19, 2010
Florence, South Carolina

39